SIXTH DIVISION
March 30, 2007

No. 1-05-1662

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 84 C 01313401 |
| | ) | |
| STANLEY HOWARD, | ) | Honorable |
| | ) | Paul Biebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Defendant, Stanley Howard, appeals from the circuit court's denial of his petition to expunge records of his arrest for a crime for which he was pardoned by the Governor. Defendant contends that the statute providing for expungement of arrest records vests no discretion within the circuit court to deny a petition that, otherwise meets the statutory requirements for expungement. Alternatively, he contends that the court would have abused any discretion it had by denying his petition. For the reasons that follow, we reverse.

FACTUAL BACKGROUND

On November 1, 1984, Chicago police arrested defendant for a number of crimes. At that time, police arrested defendant for the offenses of kidnaping, armed robbery and residential burglary committed on March 13, 1983. Defendant was also arrested at that time for the attempted kidnaping, armed robbery, and murder of two off-duty police officers on March 14, 1983. Yet another set of offenses defendant was then arrested for included possession of a stolen

1-05-1662

motor vehicle, armed robbery, kidnaping, home invasion, and rape, committed on May 26, 1983. Finally, police arrested defendant that day for the attempted robbery of two victims, plus the murder of one of those victims, committed on May 20, 1984. The State elected to *nol-pros* the charges for the offenses committed on March 13, 1983. But, defendant was tried on the charges filed for the offenses committed on March 14, was found guilty, and sentenced to 28 years. Defendant was likewise tried for the offenses of May 26, 1983, found guilty, and sentenced to a consecutive sentence of 50 years. Finally, defendant faced trial and was found guilty on charges stemming from the attempted robbery and murder of May 20, 1984, and received a sentence of death.

The State introduced defendant's confession at the trial on defendant's murder charge. In a postconviction petition, defendant alleged that his confession resulted from police torture. On January 10, 2003, prior to the resolution of his postconviction claim, defendant received a full pardon from the Governor.

In a public speech on January 11, 2003, then-Governor Ryan explained the bases for his grant of defendant's pardon.[1] After advising his audience that "[t]here are more innocent people on death row," Governor Ryan went on to describe defendant's death case:

"Evidence uncovered after trial similarly presents a compelling case

---

[1] See People v. Morris, 219 Ill. 2d 373, 383-84 (2006) (holding that the circuit court properly considered this same speech in ascertaining the executive intent in a clemency order); People ex rel. Madigan v. Snyder, 208 Ill. 2d 457, 468 (2004) (taking judicial notice of Governor Ryan's speech).

that Stanley Howard did not commit the crime for which he faces execution.

He was charged with coming up to a man in a car, asking for a match, and then shooting the man in a fit of temper when the man refused the request. However, witnesses subsequently were located who heard the crime unfold and whose testimony establishes that the shooter knew the victim and his companion and that the shooter had been stalking them so that he could, in his words, 'catch' them.

There was no physical evidence of any kind against Howard. The state's case consisted entirely of two items of evidence. First, there was an alleged identification by a single eyewitness, the victim's companion. Eyewitness identifications are never very reliable, but here the identification was particularly unreliable. The witness had been drinking heavily at the time of the shooting. She also had a restricted ability and a limited opportunity to see the shooter in the dark at night.

More importantly, she made her identification of Howard six months after the shooting and at the time was only able to make a tentative identification that Howard looked similar to the shooter. Finally, her version of what happened was directly contradicted by ballistics evidence and the testimony of the witnesses who heard what happened that night.

The only other evidence against Howard was his so-called

confession, which he has maintained from the beginning was obtained by brutal torture. Like Madison Hobley, Stanley Howard was suffocated with a plastic bag until he confessed. There is strong evidence that corroborates his account. His confession was obtained by Area 2 detectives. In Howard's case, medical evidence uncovered after trial directly establishes that Howard was physically harmed while in the custody of the Area 2 detectives.

He called his father and said these 'detectives are killing me.' His father immediately called OPS and the FBI.

In addition, witnesses have come forward after trial who corroborate that Howard was in a battered condition during his Area 2 interrogation. Having looked at all of the evidence of torture, even an investigator for the Chicago Police Department's own Office of Professional Standards has concluded that Howard indeed was abused by Area 2 detectives before he gave his so-called confession."

After relating the legal histories of other persons he intended to pardon along with defendant, Governor Ryan went on to state:

"What I can't understand is why the courts can't find a way to act in the interest of justice. Here we have four more men who were wrongfully convicted and sentenced to die by the state for crimes the courts should have seen they did not commit. ***

***

   *** Today I am pardoning them of the crimes for which they were wrongfully prosecuted and sentenced to die.

   I have reviewed these cases and I believe a manifest injustice has occurred. I have reviewed these cases and I believe these men are innocent."

The pardon itself stated, in part, as follows:

   "Now, Know, Ye, that I, GEORGE H. RYAN, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of this State, do by these presents:

COMMUTE THE SENTENCE OF

AND PARDON BASED ON INNOCENCE

STANLEY HOWARD

   Grant commutation of sentence to time served on the crime of Murder, Attempt Armed Robbery, Grant Pardon Based on Innocence on the Crime of Murder, Attempt Armed Robbery *** With Order Permitting Expungement Under the Provisions of 20 ILCS 2630/5."

   At some point, defendant apparently filed a petition to expunge the record of his arrest for his murder conviction under subsection 5(c) of the Criminal Identification Act ("Act") (20 ILCS 2630/5(c)) (West 2004)). The initial petition is not included in the record. On July 19, 2004, defendant filed an amended petition to expunge that alleged, substantively, in its entirety:

1-05-1662

"1.    The Defendant was granted a pardon by the Governor.

2.    The pardon specifically authorizes expungement.

3.    Under penalties provided by law pursuant to Subsection 1-109 of the Code of Civil Procedure, the undersigned Defendant certifies that the statements set forth in this instrument are true and correct, except to matters therein stated to be on information and belief and as to such matters the undersigned Defendant certifies as aforesaid that he believes the same to be true.

WHEREFORE, the Defendant asks the Court to expunge his arrest records and return the same to Defendant at the address shown above."

Subsection 5(c) of the Act, at that time, stated:

"Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, he may, upon verified petition to the chief judge of the circuit where the person had been convicted, any judge of the circuit designated by the Chief Judge, or in counties of less than 3,000,000 inhabitants, the presiding trial judge at the defendant's trial, may have a court order entered expunging the record of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and the Department be sealed until further order of the court upon good cause shown or as otherwise provided herein, and the name of the defendant obliterated from

-6-

the official index requested to be kept by the circuit court clerk under Section 16 of the Clerks of Courts Act in connection with the arrest and conviction for the offense for which he had been pardoned but the order shall not affect any index issued by the circuit court clerk before the entry of the order. All records sealed by the Department may be disseminated by the Department only as required by law or to the arresting authority, the State's Attorney, and the court upon a later arrest for the same or similar offense or for the purpose of sentencing for any subsequent felony. Upon conviction for any subsequent offense, the Department of Corrections shall have access to all sealed records of the Department pertaining to that individual. Upon entry of the order of expungement, the clerk of the circuit court shall promptly mail a copy of the order to the person who was pardoned." 20 ILCS 2630/5(c)) (West 2004).

Put on notice of defendant's petition, as required under subsection 5(d) of the Act, the Cook County State's Attorney objected, also pursuant to subsection 5(d). See 20 ILCS 2630/5(d) (West 2004) ("Notice of the petition for subsections (a), (b), and (c) shall be served upon the State's Attorney or prosecutor charged with the duty of prosecuting the offense, the Department of State Police, the arresting agency and the chief legal officer of the unit of local government affecting the arrest. Unless the State's Attorney or prosecutor, the Department of State Police, the arresting agency or such chief legal officer objects to the petition within 30 days from the date of the notice, the court shall enter an order granting or denying the petition"). In its initial objection,

filed in the circuit court on July 21, 2004, the State contended that the Criminal Identification Act did not permit expungement of arrest records when the defendant had other convictions. In his reply to the State's objection, defendant contended that the State was attempting to improperly import the condition that the defendant have no other convictions in order to receive an expungement found under subsection 5(a) of the Act, applicable to persons "acquitted or released without being convicted" (20 ILCS 2630/5(a) (West 2004)) into subsection 5(c), which applied to pardoned persons, such as himself. Defendant contended that the only condition he was required to meet for an expungement under subsection 5(c) was that he was to have received a pardon that permitted expungement and that, as he had done so, the circuit court was obligated to order the expungement of his arrest record. In a response to defendant's reply and a supplemental objection, the State countered that the fact that subsection 5(d) allowed for an objection to a petition for expungement undercut the notion that expungement under subsection 5(c) was automatic upon the grant of a pardon permitting expungement. The State further argued that under a sound exercise of discretion the circuit court should deny defendant's petition because, as a career criminal, the expungement of defendant's arrest would have marginal benefit to him, while expungement would undermine legitimate public safety concerns.

The circuit court denied defendant's motion for expungement in a written order on April 11, 2005. In attempting to interpret the expungement statute, the circuit court observed the legislative history of its enactment. Specifically, the circuit court noted that then-Governor Edgar made an amendatory veto to the original proposed text of the statute, presented as House Bill 4188, that would have appeared to make expungement automatic with the grant of a pardon. The

circuit court further discerned that, in the debates following the amendatory veto, the sponsoring representative, Representative Lang, construed the underlying purpose for expungement to be to assist a citizen in gaining employment and credit and to thereby allow the pardoned citizen to get his life back on track. Finally, the court observed the statement of another representative, Representative Black, to the effect that he understood the Governor's amendatory veto to imply that expungement should not be granted with every pardon and that he believed that the majority of the General Assembly would concur with that position. The circuit court then turned to the statute's language itself.

The court observed that subsection 5(c) used the permissive term "may" twice. In the first instance, where the statute states that a pardoned person "may, upon verified petition," seek expungement of arrest records, the court recognized that the statute places discretion in the pardoned person as to whether to seek that relief. In the second instance, where the statute provides "may have a court order entered expunging the record of arrest," (20 ILCS 2630/5(c)) (West 2004)) the court found itself "confront[ed] with *** whether this language means the defendant <u>may</u> get an order or the court <u>may</u> grant an order." (Emphasis in original). In either event, the circuit court perceived that the phrase could imply discretion within the court as to whether to allow expungement since "just because a petition is sought does not mean that it will be granted."

In attempting to solve the interpretive problem the circuit court detected in the language of subsection 5(c), the court looked to the statutory section as a whole and, in particular, to subsection 5(d). The court observed that cases analyzing the effect on subsection (d) on

expungement sought through the other subsections of section 5, on bases other than a pardon, concluded that meeting statutory criteria for expungement only created eligibility for expungement, not entitlement thereto. The court expressed its agreement with the reasoning of these cases and its application to petitions for expungement brought under subsection 5(c) by pardoned persons.

After appearing to determine that it had the power to grant a partial expungement, deleting the arrest for the offense for which a defendant was pardoned, without deleting the arrests executed at the same time for other offenses, the court nevertheless determined that the statute did not allow for expungement where a defendant, like defendant, had other convictions. The circuit court discerned that subsection 5(c)'s use of "an" in its opening statement, "Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement" (20 ILCS 2630/5(c)) (West 2004), necessarily limited the subsection's application to cases where the pardoned person had no other convictions.

Finally, the circuit court balanced the State's interest in maintaining defendant's record of arrest against defendant's interest in obtaining an expungement of the arrest. Without significant elaboration, the circuit court concluded that the State's legitimate interests outweighed those of defendant. The court therefore denied defendant's petition for expungement.

Defendant appeals.

ANALYSIS

On appeal, defendant contends that the circuit court erred in interpreting the expungement statute. Defendant repeats his contention from below that subsection 5(c) creates a statutory

criterion for the granting of an expungement, namely, the receipt of a pardon permitting expungement. Defendant argues that, in the event this statutory criterion is met, the circuit court has no discretion to deny a petition for expungement. Defendant further contends that his other convictions have no bearing on his ability to have the arrest reports expunged for the offense for which he was pardoned. Notably, in the event we find that the circuit court did have discretion to deny defendant's petition, defendant states in his brief that he "is not arguing on appeal that the circuit court abused its exercise of discretion." The State, on the other hand, concurs with the circuit court's judgment and reasoning, except where the circuit court perceived there to be an ambiguity surrounding the use of "may" in subsection 5(c). The State contends that there is no ambiguity and that the plain language of that subsection invests the circuit court with discretion to deny a petition for expungement by a pardoned person. These are questions of first impression; the parties do not direct us to any precedents addressing subsection 5(c), and we find no such precedents in our own research.

In construing a statute, our primary purpose is to discern and give effect to the intent of the legislature. See, e.g., People v. Muniz, 354 Ill. App. 3d 392, 394 (2004). The best indicator of the legislature's intent is the plain language of the statute, read with its ordinary and popular meaning. See, e.g., In re: Detention of Powell, 217 Ill. 2d 123, 135 (2005); People v. Norwood, 362 Ill. App. 3d 1121, 1138 (2005). In the event of ambiguity in the language of a statute, however, we may look to the statute's legislative history. See, e.g., Powell, 217 Ill. 2d at 135. We may also consider the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved by the legislation. See, e.g., People v. Palmer, 218 Ill. 2d 148, 156 (2006).

1-05-1662

A statute is ambiguous when it is susceptible to two or more reasonable interpretations. People v. Donoho, 204 Ill. 2d 159, 172 (2003). In construing a statute, we will presume that the legislature did not intend to enact absurdity, inconvenience, or injustice. See, e.g., Powell, 217 Ill. 2d at 135. We review the circuit court's interpretation of a statute *de novo*. In re Marriage of Diaz, 363 Ill. App. 3d 1091, 1096 (2006).

We begin by observing that subsection 5(c) of the Act contains an obvious grammatical mistake. As noted that subsection provides:

> "Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, *he may*, upon verified petition to the chief judge of the circuit where the person had been convicted, any judge of the circuit designated by the Chief Judge, or in counties of less than 3,000,000 inhabitants, the presiding trial judge at the defendant's trial, *may* have a court order entered expunging the record of arrest ***." (Emphasis added). 20 ILCS 2630/5(c)) (West 2004).

Defendant correctly observes that there is no subject noun for the second "may" to attach to; the second "may," grammatically, would appear wholly superfluous. Thus, we cannot concur with the circuit court that the second "may" is ambiguous in that it could reasonably refer to the court's discretion in evaluating an expungement petition. The second use of "may" merely follows a series of clauses containing nouns, specifically in its reference to judges, explaining where the defendant should bring his petition; but, as none of the judges mentioned are subject nouns, the

-12-

1-05-1662

following "may" cannot attach to them.

Further, an interpretation of "may" attaching to the judges referred to, and, thereby, suggesting that they have significant discretion over the grant or denial of the petition, is undercut by the subsequent language "have an order entered." Courts "enter" orders; they are the actors; they do not "have" another actor enter an order for them. The General Assembly appeared to recognize that distinction in subsection 5(a) of the Act, where it explicitly granted courts discretion over whether to expunge the arrest records of persons acquitted after trial or who were released without being convicted, when it stated that specified judges "may upon verified petition of the defendant order the record of arrest expunged." 20 ILCS 2630/5(a) (West 2004). The General Assembly has further recognized this fact through its choice of language in multiple, other statutes. See, e.g., 720 ILCS 5/37-4 (West 2004) ("Upon being satisfied by affidavits or other sworn evidence that an alleged public nuisance exists, *the court may* without notice or bond *enter a temporary restraining order or preliminary injunction* to enjoin any defendant from maintaining such nuisance and may enter an order restraining any defendant from removing or interfering with all property used in connection with the public nuisance") (emphasis added); 725 ILCS 5/110-6 (e) (West 2004) ("At the conclusion of the hearing based on a violation of the conditions of Section 110-10 of this Code or any special conditions of bail as ordered by the court *the court may enter an order* increasing the amount of bail or alter the conditions of bail as deemed appropriate") (emphasis added); 730 ILCS 5/5-5-5(e) (West 2004) ("Upon a person's discharge from incarceration or parole, or upon a person's discharge from probation or at any time thereafter, *the committing court may enter an order* certifying that the sentence has been

-13-

satisfactorily completed when the court believes it would assist in the rehabilitation of the person and be consistent with the public welfare. Such order may be entered upon the motion of the defendant or the State or upon the court's own motion") (emphasis added).

In light of our analysis of the plain language of the statute, considering that the plain language of a statute is the best indicator of the legislature's intent (Powell, 217 Ill. 2d at 135; Norwood, 362 Ill. App. 3d at 1138), and recognizing our authority to "alter, supply or modify words and correct obvious mistakes" in statutes so as to honor the legislature's intent (People v. Garrison, 82 Ill. 2d 444, 455 (1980)), we think the second "may" must be stricken. With that correction made, so that the statute would now read "Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, *he may*, upon verified petition to the chief judge of the circuit where the person had been convicted, any judge of the circuit designated by the Chief Judge, or in counties of less than 3,000,000 inhabitants, the presiding trial judge at the defendant's trial, *have* a court order entered expunging the record of arrest," defendant's contention that the circuit court is without discretion to deny a petition if the defendant meets the requirement of having received a pardon authorizing expungement appears correct.

The State, however, would argue that by modifying the statute in this manner we would, in fact, operate in opposition to, not in furtherance of, the legislature's intent, as exemplified by the statute's legislative history. But, our review of that history leads us in the opposite direction, and we find that history to be consistent with our conclusion.

1-05-1662

House Bill 4188, which proposed the addition of subsection 5(c) to the statute, [2] in its first draft stated:

"Whenever a person who has been convicted of an offense is granted a pardon by the Governor, he may, upon verified petition to the chief judge of the circuit where the person had been convicted, have a court order entered by the chief judge expunging the arrest and conviction record and all official records of the arresting authority and trial court and may have his name removed from all court records in connection with the arrest and conviction for the offense for which he has been pardoned. Upon entry of the order of expungement, the clerk of the circuit court shall promptly mail a copy of the order to the person who was pardoned." Journal of the Illinois House of Representatives, 87th Gen. Assem., May 19, 1992, at 1714-15.

Then-Governor Edgar, however, responded to the bill with an amendatory veto. In part, the Governor advised the General Assembly:

"House Bill 4188 permits persons who have received a gubernatorial pardon to have their records expunged. Pardons have been granted in the past for specific limited purposes, such as to allow an individual to obtain a particular license, with the express understanding that

---

[2] Prior to the addition of this subsection, there was no provision specifically providing for the expungement of a pardoned person's arrest records.

-15-

1-05-1662

there would be no expungement. It would be unfair and possibly dangerous to allow someone who received a pardon for such a limited purpose to now be allowed to expunge his record. The bill should be changed to allow expungement only when specifically authorized by the Governor in the pardon itself. In addition, the Illinois Department of Corrections should be permitted access to the sealed information if the pardoned person is subsequently convicted and incarcerated for another offense, as is now allowed for sealed records of special first offender probationers." Journal of the Illinois House of Representatives, 87th Gen. Assem., November 5, 1992, at 9105-08.

Thus, the Governor demanded two revisions in the proposed law from the legislature. First, he insisted that the law permit expungement only where the Governor believed that the pardoned person was a deserving individual, which was to be demonstrated by the inclusion of language permitting expungement in the pardon itself. Second, the Governor insisted that the law allow for the unsealing of the expunged records should the pardoned person recidivate after receiving his/her pardon. That the legislature understood these to be the Governor's two demands is exemplified by its addition to the final draft of the phrase "which specifically authorizes expungement" in describing the pardons covered under subsection 5(c), as well as its addition of the sentence "Upon conviction for any subsequent offense, the Department of Corrections shall have access to all sealed records of the Department pertaining to that individual." This understanding by the legislature is further supported by the postamendatory veto comments of

-16-

1-05-1662

Representatives Lang and Black, and by Senator Dart, the only legislators to speak on the record on the subject of House Bill 4188.

In proposing a legislative override of the Governor's veto, Representative Lang stated:

"I have a constituent, in my district who many years ago received a pardon by Governor Thompson, he has not been able to get his criminal record expunged, because there's no provision for it. *** The Governor's Veto would have required that anyone who has received a pardon in the past would have to go back before the necessary boards and committees to renew his pardon request and then get that board to recommend to the Governor that the records then be expunged. I indicated to the Governor, and the Governor's Office that I was not in favor of this approach, because I've filed this Bill to help a constituent. My constituent is a young man who was convicted wrongly of a crime and that's why he was given the pardon by Governor Thompson, and it would be an undue burden and unfair to this young man to go through life with this criminal stigma, and it would further be unfair to this young man to have to go back before the Parole and Pardon Board and the Prison Review Board and start all over on a pardon he already received many years ago. What . . . what my . . . the original Bill will do is to enable him to go right into court and get his records expunged so that he can remove this stigma from his life and get on with his life and get a job and get credit in all the things that good standing

1-05-1662

citizens need to do." 87th Gen. Assem., House Proceedings, November 19, 1992, at 64-65.

Speaking in opposition to a legislative override, Representative Black stated:

"If we override the Governor's Amendatory Veto, then it's my understanding that anyone, any person, not just perhaps this deserving individual that the Representative is familiar with but that any individual who gets a pardon would have his records expunged, and the Governor is simply saying, those records should not be expunged in every case. There may be some very extenuating circumstances that should remain in that file before any such pardon is granted and the record wiped clean. *** [T]his Bill may go far beyond what his [Representative Lang's] view is, and I don't think that the intent of the majority of the members of this Body would be just to give sort of a [carte] blanc[he] action to pardons." 87th Gen. Assem., House Proceedings, November 19, 1992, at 65-66.

The motion for override failed and Representative Lang then moved for adoption of the Governor's proposed changes, which reflect the current statutory language, including that language that requires that the "pardon by the Governor *** specifically authorize[] expungement."

In discussing the Governor's changes, adopted by the House, Senator Dart explained to his fellow senators:

"By this amendatory veto of September 25th, 1992, the Governor has

-18-

recommended a change that would limit an expungement only to a pardon which specifically authorizes expungement. A narrow interpretation of this might preclude expungement for all prior pardons. This was not the Governor's intention. He was concerned because some pardons have been granted in the past for specific limited purposes, such as to allow an individual to obtain a particular license with the express understanding there would be no expungement. In order to make expungement available for appropriate pardons, the intent of both the Governor and the Legislature has been clarified in the legislative record during the veto session of November 1992, by statements of the sponsor and those who–and that those who have been pardoned previous to this legislation may apply to the Governor for amendment to their pardon explicitly granting or limiting the right to an expungement." 87th Gen. Assem., Senate Proceedings, December 1, 1992, at 26-27.

What we find particularly telling among these exchanges between the legislature and the executive is that there is never any discussion surrounding modification of the first sentence of the proposed legislation beyond the necessity of language specifying that the pardon itself must authorize expungement. In particular, there is never any gubernatorial criticism or assembly comment surrounding the phrase in the first draft which stated that "Whenever a person who has been convicted of an offense is granted a pardon by the Governor, he may, upon verified petition to the chief judge of the circuit where the person had been convicted, have a court order entered,"

-19-

which is what we have perceived to be a correct reading of the enacted subsection 5(c), and which is clearly mandatory in nature with respect to the circuit court. In our view, this lack of comment lends credence to our determination that the new, second "may" in the final draft was nothing more than a typographical error.

The State, however, maintains its argument from below, which the circuit court appeared to accept, that Representative Lang's comment that he sought to assist a constituent in being able to get a job and, otherwise, "get on with his life," as well as Representative Black's statement to the effect that the Governor did not intend all pardoners to receive expungement, meant that the legislature did not intend subsection (c) to encompass defendant, who had also been convicted of and was serving sentence for other offenses.[3] We think, however, that this argument loses sight of the forest for the trees in its analysis of the legislative history.

Representative Lang's constituent, like defendant, received a full, rather than a general pardon. The difference between the two kinds of pardon is that a general pardon, while relieving the pardoned person of punishment, does not pass on his guilt; as one court put it, the general pardon forgives but does not forget. People v. Chiappa, 53 Ill. App. 3d 639, 641 (1977). A full pardon, on the other hand, both relieves the pardoned person from further punishment and also cleanses him of guilt for the pardoned offense. See People ex rel. Madigan v. Snyder, 208 Ill. 2d 457, 474 (2004) ("there are several different types of pardons: '[A] pardon may be full or partial, absolute or conditional. A pardon is full when it freely and unconditionally absolves the person

---

[3] While the circuit court indicated its awareness of the discussion in the Senate in its order, the court did not specifically discuss or analyze the Senate statements.

from all the legal consequences of a crime and of the person's conviction, direct and collateral, including the punishment, whether of imprisonment, pecuniary penalty, or whatever else the law has provided; it is partial where it remits only a portion of the punishment or absolves from only a portion of the legal consequences of the crime. A pardon is absolute where it frees the criminal without any condition whatsoever; and it is conditional where it does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires' [Citation.]"); Chiappa, 53 Ill. App. 3d at 641 ("at least in the State of Illinois the guilt of the defendant is absolved by a pardon only where the same states that is based upon the innocence of the defendant"); Walden v. City of Chicago, 391 F. Supp. 2d 660, 671 (N.D. Ill., 2005) ("Since at least 1977 Illinois has adhered to the view that 'two forms of pardon are presently used by the Governor of this state, one based upon the innocence of the defendant and the other merely pardoning the defendant without reference to his innocence.' [Citation.] Consequently, 'the guilt of the defendant is absolved by a pardon only where the same [pardon] states that it is based upon the innocence of the defendant.' [Citation.]"); 29 Ill. Law and Prac. Pardon and Parole § 3 ("the guilt of a defendant is absolved by a pardon only where the pardon states that it is based upon the innocence of defendant"); see also Stanley Howard v. City of Chicago, No. 03 C 8481 (N.D. Ill. October 25, 2004), slip op. at __ ("In this case, Defendants seem to agree that Howard's pardon on grounds of innocence invalidated his conviction"). No one disputes, nor can they, that the Governor has the power to grant full pardons. See People ex rel. Madigan v. Snyder, 208 Ill. 2d at 473 ("The pardon power given the Governor in article V, section 12, [of the Illinois Constitution] is extremely broad. The Governor may grant reprieves,

-21-

pardons, and commutations 'on such terms as he thinks proper.' Even before the 'on such terms as he thinks proper' language was added to the constitution, this court had recognized that the Governor's clemency powers granted by the constitution 'cannot be controlled by either the courts or the legislature. His acts in the exercise of the power can be controlled only by his conscience and his sense of public duty.' [Citation.]"). While the legislators commenting on the record expressed concern about expungement for persons who had received less than full pardons, there never appeared to be any debate that someone wrongfully convicted, as Governor Ryan determined defendant to be of one offense, who, therefore, received a full pardon, should receive an expungement without delay.

That our legislature intends for the wrongfully convicted to receive automatic expungement is further exemplified by its enactment of subsection 5-5-4(b) of the Unified Code of Corrections. 730 ILCS 5/5-5-4(b) (West 2004). Therein, the General Assembly provided:

"If a conviction or sentence has been set aside on direct review or on collateral attack and the court determines by clear and convincing evidence that the defendant was factually innocent of the charge, the court shall enter an order expunging the record of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and Department of State Police be sealed until further order of the court upon good cause shown or as otherwise provided herein, and the name of the defendant obliterated from the official index requested to be kept by the circuit court clerk under Section 16 of the Clerks of Courts Act

-22-

> in connection with the arrest and conviction for the offense but the order shall not affect any index issued by the circuit court clerk before the entry of the order."  730 ILCS 5/5-5-4(b) (West 2004).

The State attempts to argue that the Unified Code of Corrections' inclusion of the phrase "the court shall enter an order" demonstrates that the legislature understands how to employ mandatory language and that the Act's use of different language, namely, "may *** have a court order entered," demonstrates the intent of a different approach toward expungement for pardoned persons.  While we find the distinctive language between the two laws interesting, we, nevertheless, perceive it is a distinction without a difference.  In our view, the basic gist of both subsections, comporting with the most basic principles of justice, is that persons later found to be factually innocent of crimes for which they were wrongfully convicted, through legal procedures employed by either the executive or the judiciary, should not continue to be treated for purposes of State record keeping as though they were ever validly arrested for that offense.

In summation from our review of the legislative history, it seems clear that the legislature and the Governor merely sought to preclude automatic expungement of arrest records for those pardoned for a limited purpose and whose pardons were granted without contemplation of expungement.  Therefore, the Governor demanded and the legislature acquiesced in passing a law that would permit expungement where the Governor believed that the pardoned person was a deserving individual which was to be demonstrated by the inclusion of language permitting expungement in the pardon itself.  Hence, as Governor Ryan determined defendant to be eligible for expungement, the circuit court should have entered an order expunging the record of his arrest

1-05-1662

for the pardoned offense.

The State would attempt to dissuade us from our conclusion, however, by pointing to the interplay of subsection 5(d) with subsection 5(c). As previously noted, subsection 5(d) of the Act provides:

"Notice of the petition for subsections (a), (b), and (c) shall be served upon the State's Attorney or prosecutor charged with the duty of prosecuting the offense, the Department of State Police, the arresting agency and the chief legal officer of the unit of local government affecting the arrest. Unless the State's Attorney or prosecutor, the Department of State Police, the arresting agency or such chief legal officer objects to the petition within 30 days from the date of the notice, the court shall enter an order granting or denying the petition. The clerk of the court shall promptly mail a copy of the order to the person, the arresting agency, the prosecutor, the Department of State Police and such other criminal justice agencies as may be ordered by the judge." 20 ILCS 2630/5(d) (West 2004).

The State would argue, as did the circuit court in its decision, that, since the State's Attorney and other statutorily authorized government agencies can object to the expungement of arrest records of pardoned persons, the circuit court must have some discretion to exercise over the grant or denial of an expungement petition. According to the State, if this were not the case, there would be no purpose in having an opportunity to object to the circuit court. But, the

-24-

pertinent question remains on what grounds may the State object and also what factors may the court consider in passing on a petition? The State would contend that the court may consider the same factors applicable to petitions brought by the acquitted under subsection 5(a) to petitions brought by pardoned persons under subsection 5(c). The factors applicable to subsection 5(a) petitions include: "the strength of the State's case against the defendant, the State's reasons for wishing to retain the records, the defendant's age, criminal record, and employment history, the length of time that has elapsed between the arrest and the petition to expunge, and the specific adverse consequences the defendant may endure should expungement be denied." People v. Wells, 294 Ill. App. 3d 405, 409 (1998). In keeping with his position that subsection (c) establishes a statutory criterion for pardoned persons which, once met, create an absolute entitlement to an expungement, defendant urges that, with respect to subsection 5(c), the State may merely object on the grounds that the defendant has not fulfilled the requirement of that subsection, and that the circuit court may only consider whether that statutory requirement has been met. We agree with defendant.

It is entirely logical that the grounds for objection, ceded to the prosecutor under subsection 5(d), be different for those who seek expungement under subsection 5(c) than for those who seek expungement under subsection 5(a) considering the markedly different language employed in the two subsections respecting the discretion of the circuit court. As we have already noted, the language of subsection 5(a) explicitly makes expungement subject to the circuit court's discretion (see 20 ILCS 2630/5(a) (West 2004) ("[the specified judges] may upon verified petition of the defendant order the record of arrest expunged"), whereas the language of

-25-

subsection 5(c), as previously determined, is mandatory. Moreover, this dichotomy may well reflect a legislative recognition that an acquittal upon trial simply establishes the presence of reasonable doubt. See Moore v. Owens, 298 Ill. App. 3d 672, 675 (1998) ("We do not believe that even if a criminal defendant is acquitted on retrial, that alone will suffice as proof of innocence ***. *** [W]e believe that the plaintiff must also prove independently in the civil [legal malpractice] trial that he was actually innocent and 'not just lucky' [Citation.]"). Consequently, in the case of an acquittal an expungement may well depend upon the factors enumerated above in Wells which permit the court to inquire into circumstances underlying the acquittal. However, in yielding the power to permit expungement pursuant to his power to pardon, no such penetration behind the pardon would be permitted once the executive has determined that individual to be deserving of the right to expunge, a determination which is largely, and more specifically in this case is, preceded by a determination of innocence. Once that determination by the executive is recognized, the provisions of subsection 5(c) empower the Governor not only to pardon but to determine that any stigma from arrest or conviction should be purged as well. For these same reasons, we must also reject the circuit court's conclusion that subsection 5(a)'s requirement that the defendant have no other convictions applies under subsection 5(c). Hence, defendant's interpretation of the interplay of subsection 5(d) with subsection 5(c) is entirely more logical and serves as a plausible alternative to the State's interpretation.

Finally, the State argues that expungement was properly denied because it preserved the State's right to present a defense against defendant's federal civil rights lawsuit. However, there is

no factual development of this argument below, or on appeal, to allow us to make a reasoned judgment. The State never attempts to explicitly explain how expungement of his arrest records would hamper the defense in the civil rights litigation. Further, defendant concedes that if such records were needed for the defense of the civil case, there would be good cause for them to be unsealed. With respect to the records of the circuit court and Department of Corrections, we note that subsection 5(c) allows for the unsealing of those records "upon good cause shown." 20 ILCS 2630/5(c)) (West 2004). Hence, we are unpersuaded by the State's argument.

To conclude, the circuit court should not have denied defendant's petition under subsection 5(c) of the Act. We therefore reverse the circuit court's judgment and remand for the entry of an order expunging the record of defendant's arrest for the offense for which he was pardoned on grounds of innocence, with permission from the Governor to seek expungement.

Reversed and remanded with instructions.

McNULTY, J., concurs.


FITZGERALD SMITH, P.J., dissents.

I respectfully dissent from the majority's opinion in this matter. While I do not inherently agree with the trial court's reasoning below that defendant here was not entitled to expungement principally because he had prior (or other) convictions of record, and while I partially agree with the majority regarding some basic ideas, I cannot agree with the outcome proposed by the majority which effectively declares that expungement is automatic to any defendant who has received a gubernatorial pardon upon that defendant's filing of a petition in the trial court. Rather,

1-05-1662

after having read section 2630/5 of the Criminal Identification Act (Act) (20 ILCS 2630/5 (West 2004)) and examining the language and legislative debates of subsection (c) in particular, it is my view, in simple contradiction to that of the majority, that some discretion in the trial court does play a role in this context and cannot be ignored.

Let me first begin by citing those portions of the majority's opinion with which I do agree. The majority admirably reprints a good portion of Governor Ryan's 2003 public speech. It cannot be denied, nor should it ever be forgotten, that several of our very own citizens were unjustifiably made to face prosecution for certain crimes they did not commit; the value of the innocence-projects that have arisen from this unfortunate reality is immeasurable. In this day and age, I would like to think that it should truly mesmerize us all that some courts have not found a way to act in the interest of justice.

Further, and on a more practical level, I agree with the majority's discussion of the language quirk found in subsection (c)), namely, the appearance of "may" twice therein. The majority notes that the trial court below found that these clauses created an ambiguity, since, while the first "may" (appearing in the clause "may, upon verified petition") clearly gives discretion to the defendant whether to seek an order to expunge, the second "may" (appearing in the clause "may have a court order entered") was more troublesome as it could be interpreted to mean that the defendant may get an order or the court may grant an order to expunge. However, upon review, the majority ultimately discredits this reasoning to declare that the appearance of "may" twice in subsection (c)) was nothing more than an obvious grammatical mistake. And I wholeheartedly agree. Having two "may"s here presents no problem other than that they are

superfluous; both attach to the singular acting subject in the language of this subsection, namely, the person who has been convicted. The references to various judges ("chief judge", "any judge", and "presiding trial judge"), upon examination, clearly belong to a series of clauses and are not actors of any sort. Moreover, as the majority aptly points out, the lengthy sentence goes on to use the phrase "have an order entered;" courts do not have orders entered, but they enter orders. Therefore, I, along with the majority, disagree with the trial court that the use of the second "may" is ambiguous. Again, this "may" is only superfluous and should, as the majority recommends, be stricken from subsection (c)) pursuant to our authority to modify obvious mistakes in statutes (see Garrison, 82 Ill. 2d at 455).[4]

_____

[4]In all honesty, I believe either one of the "may"s can be stricken; it does not necessarily have to be the second one. Say the first "may" is deleted and the second is left (rather than the majority's insistence that the second "may" should be stricken and the first left), the subsection would then read, "Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, he, upon verified petition ***, may have a court order entered expunging ***." It is just as clear in this instance, for the same reasons discussed above, that "may" can (and does) only refer to the defendant and does not create ambiguity. In fact, the striking of the first "may" may be preferred, as the striking of the second, at the urgence of the majority, actually separates the auxiliary verb "may" from the principal verb "have" and allows the lengthy clauses mentioned above to interrupt this verb structure, which can only lend to confusion ("he may, upon verified petition *** have a court ***", as opposed to "he, upon verified petition *** may have a court ***"). Therefore, to me,

1-05-1662

However, this is where my agreement with the majority ends, as I just do not see how having reasoned that the second "may" is superfluous directly leads, without more, to the conclusion that defendant's contention "appears correct" that the trial court is without discretion to deny a petition if the defendant has received a pardon authorizing expungement from the Governor, *i.e.*, under subsection (c)) . This is not how I read the statute.

For the majority's considerable discussion of subsection (c)), the fact remains that the language used therein is "may," not "shall;" the defendant *may have* a court order entered upon his petition to expunge based on a pardon by the Governor which authorizes expungement. The majority focuses on the latter portion of this concept: the Governor's pardon authorizing expungement. Yet, it is the first portion upon which I feel the focus should be: that the defendant may have a court order entered. Subsection (c)) does not state that he "shall" have an order entered, which would clearly indicate the mandate the majority wants to impose here. Instead, that sense is simply not present. We are not dealing here with legislation originating from a more archaic time where the interchange between "may" and "shall" was commonplace, where it was often open to viable debate what the true intent behind the use of one of these words in a law actually was. This is a modern statute and, in the face of all our case law that has developed into the rule regarding our exercise of the plain and ordinary meaning of the words of a statute, I must conclude that there is a sense of permission in subsection (c)), not one of automatic directive. "May" connotes "possibility, probability or contingency," while "shall" "is a word of command" and is "imperative or mandatory," having a "compulsory meaning" and "denoting obligation." See

which "may" is stricken is pure semantics.

-30-

1-05-1662

Black's Law Dictionary 883, 1233 (5th ed. 1979). The difference is undeniable. Accordingly, I believe that had the intent behind this subsection been, as the majority concludes, a general automatic grant of a petition to expunge based on a gubernatorial pardon, the language chosen would have reflected a more obligatory sentiment; *i.e.*, that such a defendant shall have an order entered expunging his record.

What is more, I cannot help but note that in the very subsection at issue, "shall" is used in the sentences following the first, as in an order of expungement "shall not affect" any index in the circuit court, the Department of Corrections "shall have access" to records, and the clerk of the court "shall promptly" mail a copy of the expungement order to the pardoned person. This makes it further apparent to me that the authors of this statute knew the difference between "may" and "shall" and that, by the use of "may" in the first critical sentence, did not mean to indicate that orders expunging records would automatically be granted upon a defendant's petition without some sort of discretion being exercised by the "chief judge," "any judge" or "presiding trial judge" to whom the petition is presented. The use of these words and their placement are, to me, clearly deliberate.

The first sentence of subsection (c)) could be examined in another manner, and perhaps this is the way the majority is viewing it. The first sentence, the one in which the "may" is present, has but one actor: the defendant. The sentence, then, addresses only his actions: that he, who has received "a pardon by the Governor which specifically authorizes expungement," may, upon a verified petition to the appropriate presider, have a court order entered expunging his record. It could be said, then, that all the permissive language applies only to the defendant, giving him

-31-

1-05-1662

alone the choice whether to file a petition seeking expungement. But this is just it: this sentence uses the word "may" because it is a defendant's choice to become a defendant under this subsection and begin a process which may lead to the expungement of his record, via a petition based on a gubernatorial pardon. By choosing to do so, he *may* have an order entered expunging it--if he is successful. He very well *may not* choose to file the petition, and/or he very well *may not* succeed with it. Again, the use of the word "may" indicates contingency. And the process here remains that of filing a petition, which is merely a supplication requesting, not ordering, that something be done. Petitions are denied in our courts everyday. There is absolutely no reference in this sentence to the notion that whoever is presiding over the petition must grant it. Had this been the intent, I find it hard to believe that language would not have been included directing presiders to mandatorily grant these petitions, or that a wholly different process rather than the common filing of "a petition" should be used.

I find further support for my conclusion in another portion of section 2630/5, namely, subsection (d). As is the cardinal rule, a statute should be construed as whole, with each section read in conjunction with every other section. See USX Corp. v. White, 352 Ill. App. 3d 709, 721 (2004); accord Mashni Corp. ex rel. Mashni v. Board of Election Com'rs, 362 Ill. App. 3d 730, 742 (2005 (all sections of statute must be read and considered together as a whole); see also Lulay v. Lulay, 193 Ill. 2d 455, 466 (2000). In section 2630/5, which generally deals with different defendants seeking expungement, subsection (a) addresses those not having previously been convicted of any criminal offense who are acquitted or released without being convicted; subsection (b) addresses those whose identity was stolen by one who is then convicted of a crime

-32-

1-05-1662

in that name; and subsection (c)), of course, addresses those who have been convicted but granted a pardon by the Governor which "authorizes" expungement.  See 20 ILCS 2630/5 (West 2004). Subsection (d) then states:

> "(d) Notice of the petition for subsection (a), (b), and (c)) shall be served upon the State's Attorney or prosecutor charged with the duty of prosecuting the offense, the Department of State police, the arresting agency and the chief legal officer of the unit of local government affecting the arrest.  Unless the State's Attorney or prosecutor, the Department of State Police, the arresting agency or such chief legal officer objects to the petition within 30 days from the date of the notice, the court shall enter an order granting or denying the petition."  20 ILCS 2630/5 (West 2004).

Several concepts can be gleaned from this.  Subsection (d) makes no distinction among subsections (a), (b) and (c)) regarding its application; rather, all three are deliberately referenced equally and all three are, therefore, incorporated therein.  In addition, subsection (d) provides for a process regarding these subsections: it orders that notice is to be given to the State's Attorney/ prosecutor, the State police, the arresting agency and the chief officer; any one of these then has 30 days in which to object to the defendant's petition for expungement made under subsection (a), (b) or (c)); and regardless of whether an objection is filed, a court will enter an order "granting or denying" the expungement petition.  Why would such a process be described and make reference to all the subsections, including (c)), if it were not to be followed?  More significantly, why would an objection be possible and the words "the court shall enter an order *granting or denying* the

-33-

petition" be included in this subsection if, as the majority would have, a petition for expungement filed pursuant to subsection (c)) were meant to be automatically granted and, thus, treated differently from petitions filed under subsections (a) and (b) of the very same statutory section? It is clear to me that subsection (d) says nothing special about subsection (c)) in comparison to the other subsections and there is no indication that petitions filed under subsection (c)) are exempt from objection and, potentially, denial while petitions filed under subsection (a) and (b) are not so exempt.

In light of this point, the majority notes that factors applicable to a discretionary determination of expungement for a petition filed under subsection (a) have been laid out in People v. Wells, 294 Ill. App. 3d 405 (1998), and include considerations such as the defendant's age, criminal record, and employment history, the strength of the State's case against him, and the State's reasons for wishing to retain the records. The majority asks, if expungement under subsection (c)) is not automatic then "on what grounds may the State object and also what factors may the court consider in passing on a petition" under that subsection? The majority asks this because it insists that, since the grounds for filing petitions for expungement under subsections (a) and (c)) differ as one involves acquittal and the other gubernatorial pardon, the same considerations in evaluating the petitions should not apply. I ask, why can't they? In the end, petitions for expungement all seek the same objective; while they may be based on different grounds, they are all addressed together under the same section of our statute (section 2630/5). Why, then, must there inherently be different considerations when they all ultimately seek the same result simply because the petitions are slightly different in their underlying facts?

-34-

1-05-1662

Even lending credence to the majority in this respect and distinguishing petitions under subsections (a) and (c)), I can think of several grounds outside of the realm of factors in <u>Wells</u> on which the State may object to a petition under subsection (c)) and several factors that a court may consider in passing on such a petition. The most immediate that come to mind are public interest and public safety concerns. And, while the majority may quickly counterbalance the consequences of these to a pardoned defendant and his rights under our laws, my point is only that this very discussion should not automatically be dispensed with, but should take place on a case-by-case basis before the trial court where the petition is presented. Every indication of subsection (d)'s language stating that objections may be raised to petitions filed under "subsections (a), (b), *and* (c))" of section 2630/5 for expungement and that the court shall then "enter an order *granting or denying* the petition" supports this. See 20 ILCS 2630/5(d) (West 2004) (emphasis added).

The majority also finds the legislative debates on subsection (c)) illuminating regarding the mandatory approach it takes here. I, however, do not view them the same way and do not find them supportive of the conclusion that a defendant who has received a gubernatorial pardon authorizing expungement should automatically be given that expungement without the employ of any trial court discretion.

When House Bill 4188 was first proposed in the Senate, Senator Dart admitted that the portion providing for expungement in the case of pardons "had been technically flawed;" the bill passed. The Governor proposed an amendatory veto seeking to change the bill by allowing expungement only when specifically authorized by the Governor in the pardon itself; this opened

-35-

up more debate in the House. The majority mentions that Representative Lang proposed an override to the Governor's amendatory veto while discussing a constituent that he had in his district whom he wanted to help "go right into court and get his records expunged." The majority then quotes comments from Representative Black in opposition to Lang, which we find pertinent enough to reprint here:

"If we override the Governor's Amendatory Veto, then it's my understanding that anyone, any person, not just perhaps this deserving individual that [Representative Lang] is familiar with but that any individual who gets a pardon would have his records expunged, and the Governor is simply saying, those records should not be expunged in every case. There may be some very extenuating circumstances that should remain in that file before any such pardon is granted and the record wiped clean. So, *** there does seem to be certainly on the point ***some questions that this Bill may go far beyond what [the Governor's] particular intent is, and I don't think that the intent of the majority of the Members of this Body would be just to give sort of a court blanc [sic] action to pardons."

The motion for override was defeated and the Governor's proposed change of allowing expungement only when the Governor specifically authorized it in the pardon was included in the law, hence the inclusion of that portion of subsection (c)) referring to defendants "granted a pardon by the Governor which specifically authorizes expungement ***."

In light of Representative Black's comments, as well as, again, the precise language used

in the statute, I do not think, as does the majority, that subsection (c)) was written to make expungement automatic upon the simple filing of a petition based on a pardon from the Governor. Representative Black echoed all my concerns. While some people, even perhaps defendant in the instant case, may be deserving of the expungement of their records, there could very well be, upon further review, circumstances in other cases where it would be far better, for viable reasons, that expungement should not occur. From the legislative debates, I do not think it was the intent that the statute be written to grant to everyone and anyone automatic expungement upon the filing of a petition. Rather, as Representative Black plainly put it, it seems to me that even the Governor believed that records should not be expunged in every case. The Governor's amendatory veto sought to add the concept that a defendant who had been pardoned by the Governor could seek expungement of his record if that pardon "specifically authorizes expungement." Had the Governor meant, as Representative Lang proposed, that expungement was to be automatic simply because the defendant had received such a pardon, he would not have used the language "authorizes" but, rather, something like "mandates" or "directs" expungement and Representative Lang's proposal would not have been defeated. The Governor's pardon "authorizing" expungement is just a criteria, then, that the defendant must have before he is even qualified to proceed with his petition under subsection (c)); it simply prevents those who have been pardoned but not offered expungement by the Governor from filing a petition under this subsection. The petition with the potential for expungement is then left to the discretion of the court which, as per subsection (d), may grant or deny it.[5]

---

[5]The majority further notes that Senator Dart also discussed the Governor's changes, as

1-05-1662

On a final note, the majority proposes that section 5-5-4(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-4(b) (West 2006)) "further exemplifie[s]" that the legislature intended for the wrongly convicted to receive automatic expungement under subsection (c)) of the Act. Yet, section 5-5-4(b) states that, if a conviction has been set aside and a court determines that the defendant was factually innocent, "*the court shall enter* an order expunging the record of arrest." 730 ILCS 5/5-5-4(b) (West 2006) (emphasis added). I find it interesting that the majority, who was so quick to distinguish between a section 2630/5 petition for expungement under subsection (a) and one under subsection (c)) on the mere basis that one involves pardoned defendants and the other does not, is now citing a completely different statute in support of its contentions. In addition, I again fail to see how the language is comparable; contrary to the majority's opinion, this is not a distinction without difference. Section 5-5-4(b) of the Code clearly employs mandatory language ordering expungement, while subsection (c)) of the Act uses permissive language along with subsection (d) alluding to the fact that a court has the ability to deny a petition to expunge under that subsection. The difference between section 5-5-

adopted by the House. The majority finds the lack of discussion surrounding modification of the first sentence of the proposed legislation beyond the addition that the pardon itself must authorize expungement to be "particularly telling." I disagree. Senator Dart was commenting on a potentially narrow interpretation of the bill that could arise which would "preclude expungement for all prior pardons." This may, in some way, be tied to the trial court's misconstrued decision here that because defendant had prior convictions his record could not be expunged. Regardless, reading Senator Dart's comments, in my view, further supports my conclusion.

-38-

1-05-1662

4(b) of the Code and subsection (c)) of the Act is huge.

In conclusion, while I find the majority's opinion to be well written, I simply cannot agree with the ultimate result it proposes. Again, this is not to say, of course, that I agree with the reasoning presented by the trial court below; but, while that is the case, I find the outcome it reached more reasonable than that of the majority here. In my practical view, I feel that there is something more, or there should be something more, to the operation of subsection (c) than just automatically granting expungement to defendants who file petitions based on a gubernatorial pardon that merely authorizes it. Based on the language of subsection (c), as well as other portions of that very statute and all the other factors I have considered, I believe our trial courts are vested with some discretion in these matters which opens the issue of expungement to debate on a case-by-case basis. And, as defendant in the instant case specifically states that he "is not arguing on appeal that the circuit court abused its exercise of discretion" in denying his petition, I, contrary to the majority, would affirm this particular matter for the reasons I have discussed herein.