(No. 104608.—

(No. 105022.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STANLEY HOWARD, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANA HOLLAND, Appellant.

*Opinion filed March 19, 2009.—Rehearing denied May 26, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Marie Quinlivan Czech and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Karen L. Daniel, of Chicago, and Meredith N. Baron and Sarah F. Terman, law students, for appellant Holland.

Arthur Loevy, Jon Loevy, Russell Ainsworth and Kurt Feuer, of Loevy & Loevy, of Chicago, for appellee Howard.

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Garman, Karmeier, and Burke concurred in the judgment and opinion.

Justice Thomas dissented, with opinion, joined by Justice Kilbride.

## OPINION

Petitioners, Stanley Howard and Dana Holland, each received a gubernatorial pardon which specifically authorized expungement pursuant to section 5 of the Criminal Identification Act (Act) (20 ILCS 2630/5 (West

2004)). The central issue in this case is whether the Act confers discretion upon the court to deny a petition to expunge brought under section (c) of the Act. After the circuit court of Cook County denied their petitions, separate panels of the appellate court disagreed as to the ability of the circuit court to deny their petitions. *Howard*, 372 Ill. App. 3d 490; *Holland*, 374 Ill. App. 3d 121. We allowed both petitions for leave to appeal (210 Ill. 2d R. 315) and consolidated the causes for decision. For the following reasons, we determine that the Act vests a trial court with discretion to grant or deny the petitions.

## BACKGROUND

The Act allows eligible persons to petition for the expungement of criminal records in various situations. See, *e.g.*, 20 ILCS 2630/5(a), (b), (c), (c—6) (West 2004) (permitting expungement after an acquittal or release without a conviction; if a conviction is made in the name of a wrong person; upon a pardon; and when set aside on direct review or collateral attack). At issue is subsection (c), which provides:

> "(c) Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, he *may*, upon verified petition to the chief judge of the circuit where the person had been convicted, any judge of the circuit designated by the Chief Judge, or in counties of less than 3,000,000 inhabitants, the presiding trial judge at the defendant's trial, *may* have a court order entered expunging the record of arrest from the official records ***." (Emphases added.) 20 ILCS 2630/5(c) (West 2004).

Petitions to expunge brought pursuant to subsections (a), (b), and (c) are subject to subsection (d) of the Act. Subsection (d) provides:

> "(d) Notice of the petition for subsections (a), (b), and (c) shall be served upon the State's Attorney or prosecutor charged with the duty of prosecuting the offense, the

Department of State Police, the arresting agency and the chief legal officer of the unit of local government affecting the arrest. Unless the State's Attorney or prosecutor, the Department of State Police, the arresting agency or such chief legal officer objects to the petition within 30 days from the date of the notice, the court shall enter an order granting or denying the petition." 20 ILCS 2630/5(d) (West 2004).

Here, both petitioners received pardons in identical language. Each stated that the petitioner received a "Pardon Based Upon Innocence With Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5." Both Howard and Holland filed petitions for expungement under subsection (c) of the Act. The circuit court denied both petitions and petitioners appealed those denials.

In the *Howard* appeal, an appellate court majority reversed the circuit court's denial of Howard's petition for expungement. *Howard*, 372 Ill. App. 3d at 491. The appellate court struck the second "may" from the Act, ruling that the second "may" in subsection (c) was an obvious grammatical error. *Howard*, 372 Ill. App. 3d at 499. The court then reviewed the legislative history of the Act. *Howard*, 372 Ill. App. 3d at 499-505. The appellate court determined the Act provides for "automatic expungements" (*Howard*, 372 Ill. App. 3d at 504) and does not confer discretion upon the circuit court to deny a petition for expungement if an executive pardon authorizes it (*Howard*, 372 Ill. App. 3d at 507). The court remanded for entry of an order expunging the record of defendant's arrest. *Howard*, 372 Ill. App. 3d at 507. Justice Fitzgerald Smith dissented. *Howard*, 372 Ill. App. 3d at 507 (Fitzgerald Smith, P.J., dissenting). He agreed that the second "may" in section (c) was a mistake. *Howard*, 372 Ill. App. 3d at 508 (Fitzgerald Smith, P.J., dissenting). He went on to reason that the permissive language of the Act "authorizes" expungement but does

not mandate it. Rather, the trial court retains the discretion under subsection (d) to grant or deny the petition. *Howard*, 372 Ill. App. 3d at 514 (Fitzgerald Smith, P.J., dissenting).

In the *Holland* appeal, the appellate court majority held that the entry of an expungement order is not mandatory. *Holland*, 374 Ill. App. 3d at 127-28. The majority noted that subsection (d) of the Act clearly references subsections (a), (b), and (c). *Holland*, 374 Ill. App. 3d at 127. The appellate court majority held the circuit court retains discretion to deny an expungement request, despite the Governor's authorization of expungement. *Holland*, 374 Ill. App. 3d at 127. The court remanded to the circuit court to consider the petition. *Holland*, 374 Ill. App. 3d at 128. Justice Neville dissented. *Holland*, 374 Ill. App. 3d at 128 (Neville, J., dissenting). He reasoned that section 5 of the Act does not give the circuit court discretion to deny a petition for expungement when the Governor has expressly authorized expungement. *Holland*, 374 Ill. App. 3d at 128-29 (Neville, J., dissenting).

We allowed petitions for leave to appeal filed by Howard and Holland (210 Ill. 2d R. 315) and consolidated for decision. The issues raised are matters of statutory construction and a question of law; therefore, our review is *de novo*. *People v. Perry*, 224 Ill. 2d 312, 324 (2007).

## ANALYSIS

The power of the Governor to grant a pardon is found in the Illinois Constitution. Ill. Const. 1970, art. V, §12. Article V provides that "[t]he Governor may grant reprieves, commutations and pardons, after conviction, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law." Ill. Const. 1970, art. V, §12.

The power to grant or deny a petition for expungement is found in statutes created by the legislature.

*People v. Bushnell*, 101 Ill. 2d 261, 268 (1984). Just as a gubernatorial pardon alone does not entitle a petitioner to expungement (*People v. Glisson*, 69 Ill. 2d 502, 506 (1978)), without appropriate legislation, a court is without authority to expunge a record of conviction (*Bushnell*, 101 Ill. 2d at 268). Therefore, as the appellate court in *Holland* aptly stated, "[t]he question to be resolved *** is not whether the Governor properly granted the pardon pursuant to the constitution, but the effect of the order 'permitting expungement under the provisions of 20 ILCS 2630/5.' " *Holland*, 374 Ill. App. 3d at 125.

In construing a statute, this court's primary objective is to ascertain and give effect to legislative intent, the surest and most reliable indicator of which is the statutory language itself, given its plain and ordinary meaning. *Perry*, 224 Ill. 2d at 323. In determining the plain meaning of statutory terms, this court will consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *Perry*, 224 Ill. 2d at 323. Where the language of the statute is clear and unambiguous, this court must apply it as written, without resort to further aids of statutory construction. *Perry*, 224 Ill. 2d at 223.

Petitioners argue that the pardons issued by the Governors satisfy the criteria for expungement set out in section (c) such that expungement of their records should be automatic. They argue that subsection (c) is the only relevant section to be considered. A circuit court, according to petitioners, has no discretion to deny an expungement petition properly filed pursuant to a gubernatorial pardon specifically authorizing expungement. Respondent contends that the Act grants the circuit court discretion to deny petitions for expungement under subsection (c), as its language is permissive, not mandatory. Subsection (d) provides an explicit basis for the court's discre-

tion. Therefore, the circuit court has discretion to grant or deny a petition for expungement even when the Governor's pardon specifically authorizes expungement.

Preliminarily, we address subsection (c)'s redundant use of the word "may." The cardinal rule of statutory construction is to effectuate the intent of the legislature. *People v. Garrison*, 82 Ill. 2d 444, 455 (1980). To achieve that goal, a court may alter, supply, or modify words and correct obvious mistakes. *Garrison*, 82 Ill. 2d at 455. We agree with the appellate court's statements in *Howard* and *Holland* that the second "may" must be struck from the statute as an obvious grammatical error. *Holland*, 374 Ill. App. 3d at 124, 127; *Howard*, 372 Ill. App. 3d at 499, 502. It is clear that, grammatically, subsection (c) contains a superfluous "may," because the second "may" is not attached to a subject noun or clause. With this in mind, we consider whether the Act confers discretion upon the court to deny a petition to expunge brought under section (5)(c) of the Act.

We note that the conditional nature of the statute begins with the language directed at the Governor. The expungement of the record of the pardoned individual is permissive because the Act applies only when the Governor "specifically authorizes" an expungement. 20 ILCS 2630/5(c) (West 2004). The Governor's authorization serves to make the pardoned citizen legally eligible for expungement. See Black's Law Dictionary 143 (8th ed. 2004) (defining "authorize" as "[t]o give legal authority; to empower"). The notable implication of the use of the word "authorize" is the delinking of a pardon and an expungement. Thus, the statute contemplates that a Governor may choose to pardon an individual and also decline to issue authorization of an expungement.

The use of the term "may" in the statute also is permissive as to the petitioner and merely allows the petitioner to act. Whichever of the "may" terms is

stricken, it is apparent that both "may" terms refer to the petitioner and not the judge to whom the petition is directed. As the appellate court in *Holland* stated, "the language of that section remains general and does not actively direct the trial court to enter an order upon review of a petition to expunge, but only allows the Governor to 'authorize' such an action." *Holland*, 374 Ill. App. 3d at 127. It is therefore incorrect to read the "may" terms in subsection (c) to require the judge's entry of an expungement. Rather, the defendant *may* submit a petition, from which he *may* get a court order.

Language directing the trial court to act is found in subsection (d). Subsection (d) sets out the procedure for petitions filed pursuant to subsections (a), (b), or (c). 20 ILCS 2630/5(d) (West 2004). Subsection (d) uses mandatory language in that the trial court "shall" enter an order. A plain reading of the statute, however, requires only that an order is entered, but does not require a specific disposition. Rather, the court shall enter an order which shall "grant or deny" a petition. 20 ILCS 2630/5(d) (West 2004). Thus, for petitions filed under subsection (a), a trial court retains discretion to grant or deny a petition of an eligible petitioner who has been acquitted or released without conviction and has no prior convictions. *People v. Wells*, 294 Ill. App. 3d 405 (1998). Similarly, for petitions filed under subsection (b), a trial court retains discretion where the records show the conviction was made under a wrong name. Therefore, petitions filed under subsection (c)—which the legislature also designated for consideration by the circuit court under subsection (d)—are subject to the discretion given by subsection (d) to the judge to "grant or deny" the petition. We therefore reject petitioners' argument because it would necessarily render the "grant or deny" language mere surplusage.

We note that had the legislature chosen to make expungement mandatory, it could have done so. This is demonstrated by section (c—6) of the Act, which concerns convictions set aside on direct review or collateral attack. It states, "If a conviction has been set aside on direct review or on collateral attack and the court determines by clear and convincing evidence that the defendant was factually innocent of the charge, *the court shall enter an expungement order* as provided in subsection (b) of Section 5—5—4 of the Unified Code of Corrections." (Emphasis added.) 20 ILCS 2630/5(c—6) (West 2004). The language of section (c—6) tracks section 5—5—4(b) of the Unified Code of Corrections, which states:

> "If a conviction or sentence has been set aside on direct review or on collateral attack and the court determines by clear and convincing evidence that the defendant was factually innocent of the charge, the *court shall enter an order expunging the record* of arrest from the official records of the arresting authority and order that the records of the clerk of the circuit court and Department of State Police be sealed until further order of the court upon good cause shown or as otherwise provided herein, and the name of the defendant obliterated from the official index requested to be kept by the circuit court clerk under Section 16 of the Clerks of Courts Act in connection with the arrest and conviction for the offense but the order shall not affect any index issued by the circuit court clerk before the entry of the order." (Emphasis added.) 730 ILCS 5/5—5—4(b) (West 2004).

The language of these sections lacks any reference to the ability of a trial court to "deny" such a petition. Rather, a court "shall" enter an order expunging a record if the terms of the statute are met. The legislature's use of the phrase "the court shall enter an order" instead of "may *** have a court order entered" and "shall enter an order granting or denying" demonstrates the intent of a different approach toward pardoned persons.

Subsection (d)'s additional phrasing—allowing for the State's Attorney and other statutorily authorized government agencies to object to the expungement of arrest records of pardoned persons—indicates the circuit court has discretion to grant or deny expungement. If the circuit court did not have discretion, there would be little purpose in allowing the prosecuting authority to object. The Act also provides that even if the State's Attorney or other authority does not object, the court may still "grant or deny" the petition.

This outcome also dovetails with the Governors' use of specific language in their pardons. In pardoning Howard, then-Governor Ryan said, "With Order *Permitting* Expungement Under The Provisions Of 20 ILCS 2630/5." (Emphasis added.) Former Governor Blagojevich used identical language in his pardon of Holland. The use of the word "permitting" implicitly acknowledges that a court has power under the Act to grant or deny a petition. It is also consistent with subsection (c)'s use of the word "authorize" in reference to the Governor's power, which made Howard and Holland legally eligible for expungement. We therefore read the Act as allowing the trial court discretion to grant or deny a petition for expungement. We turn to petitioners' specific cases.

In 1984, Stanley Howard was convicted of murder and attempted armed robbery. The trial court sentenced Howard to 15 years' imprisonment for the armed robbery. Howard was sentenced to death for the murder conviction. The conviction and sentences were affirmed on appeal. *People v. Howard*, 147 Ill. 2d 103 (1991). In 2003, Governor George H. Ryan commuted Howard's death sentence and pardoned him "Based On Innocence *** With Order Permitting Expungement Under The Provisions of 20 ILCS 2630/5." After receiving the pardon, Howard filed a petition for expungement in the circuit court of Cook County. The State objected, arguing

Howard was not a good candidate for expungement because he has two other convictions. The circuit court determined it had discretion to deny expungement even though the executive pardon permitted expungement. The court denied the petition for expungement, concluding that "the interest of the Petitioner in obtaining expungement is outweighed by the State's legitimate interest in maintaining Petitioner's records of arrest." Howard appealed. The appellate court reversed the circuit court's denial of Howard's petition for expungement. *Howard*, 372 Ill. App. 3d 490.

Here, having ruled that the court had discretion, we note that petitioner Howard is not arguing that the circuit court abused its discretion in denying the petition. We therefore reverse the judgment of the appellate court in *Howard*.

Prior to addressing the merits of Holland's appeal, we consider Holland's motion, ordered taken with the case, seeking to strike portions of the State's brief. The record reveals that in 1993, Dana Holland was convicted of three counts of aggravated criminal sexual assault and sentenced to three consecutive terms of 30 years' imprisonment. Holland was also convicted of attempted murder and armed robbery and sentenced to 28 years' imprisonment to run consecutively to his aggregate 90 years' imprisonment for the aggravated criminal sexual assault convictions. All convictions were affirmed on appeal. Ten years later, in 2003, the circuit court vacated Holland's convictions of aggravated criminal sexual assault when DNA test results exonerated Holland of the crimes. Holland was granted a new trial and ultimately acquitted of attempted murder and armed robbery. On January 6, 2005, Holland received a gubernatorial pardon from Governor Rod Blagojevich in both cases "Based Upon Innocence With Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5." Holland then

filed petitions for expungement. The State raised no objection. The circuit court denied the petitions to expunge, without hearing, holding Holland ineligible because of a prior 1986 conviction. Holland appealed.

The State's brief contends that even though Holland was declared innocent by the Governor, he is still a menace to society and expungement will jeopardize public safety. In the alternative, Holland asks that we grant him leave to file an affidavit showing he is not a menace to society. Holland does not cite to any violations of our supreme court rules as the basis for striking a portion of the State's brief. Rather, Holland merely complains that statements made in the State's brief are not in the record or based in fact and are "unfairly insulting to Mr. Holland."

The State objects to striking the statement because it is argument supported by Holland's prior conviction of armed robbery, a violent felony. The State refers to statements in Holland's affidavit to support its argument, but makes no argument on whether we should allow Holland leave to file the affidavit.

This court has recognized that striking a portion of an appellate brief " 'is a harsh sanction,' " appropriate only if a violation of our procedural rules interferes with or precludes our review. *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005), quoting *Moomaw v. Mentor H/S, Inc.*, 313 Ill. App. 3d 1031, 1035 (2000). Here, the statement was included to support the State's argument that public safety reasons require judges to exercise discretion in denying petitions for expungement. The statement neither hinders nor precludes our review. Further, Holland's prior conviction for armed robbery is in the record in a certified statement of conviction. The State's argument is, therefore, supported by the record. Holland's motion to strike is therefore denied. We also deny Holland's alternative motion to file an affidavit claiming he is not a menace to society.

Turning to Holland's petition, the appellate court majority determined the circuit court erroneously denied Holland's petitions for expungement based solely on a belief that it had no discretion to grant the petitions because of Holland's prior 1986 conviction. *Holland*, 374 Ill. App. 3d 121. The circuit court erroneously denied the petition under subsection (a) of the Act, which permits expungements after acquittal or release without conviction where petitioner does not have a prior conviction. The majority then acknowledged that remand for further proceedings was necessary because of the circuit court's erroneous denial of the petitions under the wrong section of the Act. *Holland*, 374 Ill. App. 3d at 125. We agree with the appellate court that Holland's case should be remanded for the circuit court to exercise its discretion. The record does not demonstrate that the State made an objection below. Therefore, we agree with the appellate court that the "State has waived any objection and the trial court must grant or deny the petition based on the petition and record of this case." Petitioner and the State make no argument otherwise to this court.

## CONCLUSION

In *Howard*, we reverse the judgment of the appellate court. In *Holland*, we affirm the judgment of the appellate court and remand to the circuit court to determine if expungement should be granted.

*No. 104608—Reversed.*
*No. 105022—Affirmed and remanded.*

JUSTICE THOMAS, dissenting:

I cannot join the majority opinion, which is directly contrary both to the plain language of the statute and to obvious legislative intent. According to the majority, *Holland* "aptly stated" that the question to be resolved is the effect of the Governor's pardon " 'permitting expungement under the provisions of 20 ILCS 2630/5.' " 233 Ill. 2d at 218, quoting *Holland*, 374 Ill. App. 3d at

125. In fact, the question is not the effect of the former Governors' pardons permitting expungement, but the effect of the petitioners having filed verified petitions with the circuit court setting forth that they had received gubernatorial pardons specifically authorizing expungements. See 20 ILCS 2630/5(c) (West 2006). The answer is clear under the plain language of the statute: the trial court should have entered expungement orders. The *Howard* court, based on a correct reading of the statute, reversed the circuit court, and the *Holland* court, based on a misunderstanding of the phrase "may have a court order entered," improperly affirmed the circuit court. Unfortunately, the majority has chosen to reverse in *Howard* and to affirm in *Holland*, when the plain language of section 5(c) requires the opposite result.

Before explaining why the majority opinion is flawed, I will briefly note the parts of the majority opinion with which I agree. The majority correctly sets forth the standard of review and the applicable canons of statutory construction. Thus, I agree with the majority that the language of the statute given its plain and ordinary meaning is the surest indicator of the legislature's intent, and that we must consider the statute in its entirety and keep in mind the subject it addresses and the legislature's intent in enacting it. 233 Ill. 2d at 218. One principle that I would add to those listed by the majority is that we must presume that the General Assembly did not intend absurdity, injustice or inconvenience. *People v. Palmer*, 218 Ill. 2d 148, 156 (2006). I further agree with the majority's conclusion that the second "may" in section 5(c) is an obvious grammatical mistake that may be stricken.[1] 233 Ill. 2d at 219. After that, I part ways with the majority.

---

[1] After so concluding, however, I would not put the second "may" back in the statute a mere two paragraphs later. See 233 Ill. 2d at 219-20.

"May Have a Court Order Entered"

The question before the court turns on the meaning of statutory language providing that, if a petitioner meets certain requirements, he "may have a court order entered expunging the record of arrest." I believe that the statute means exactly what it says. The majority disagrees, concluding that the meaning of the above language is *not* what it says, but rather that, if a defendant meets the statutory requirements, he may *seek to* have a court order entered expunging the record of arrest. How does one arrive at this conclusion?

There are at least three improper ways, each of which involves defining words incorrectly, violating grammatical rules, or both. If there is a valid way, no one has yet made that argument. The three improper ways are: (1) the State's position that both "mays" in the statute must be given effect, with one referring to the petitioner and one referring to the trial court; (2) the dissent's position in *Howard*, which was to use the wrong definition of the word "may" (see *Howard*, 372 Ill. App. 3d at 509 (Fitzgerald Smith, P.J., dissenting)); and (3) the majority's hybrid of the above two approaches, which is to first state that there is only one "may" in the statute, but then to conclude that there are actually two "mays," each with a different definition (233 Ill. 2d at 219-20). Let us consider each of these positions in turn.

We need not dwell on the State's argument because the majority correctly rejects it. The second "may" in the statute is redundant and is an obvious grammatical mistake. It cannot be read as referring to the trial court because, as *Howard* correctly stated, "[c]ourts 'enter' orders; they are the actors; they do not 'have' another actor enter an order for them." *Howard*, 372 Ill. App. 3d at 498. Accordingly, there is only one "may" in the statute, and it refers *not* to the circuit court but to the petitioner. 233 Ill. 2d at 220. So far so good.

Next, let us consider the dissent in *Howard*, which was later adopted by the majority in *Holland* (see *Holland*, 374 Ill. App. 3d at 127 ("we must respectfully disagree with the majority in *Howard* and agree with the dissent by Justice Fitzgerald Smith in that case")). The dissent in *Howard* concluded that the phrase "may have a court order entered" grants discretion to the trial court because the definition of "may" is " 'possibility, probability or contingency,' " while the definition of "shall" is " 'a word of command' and is 'imperative or mandatory.' " *Howard*, 372 Ill. App. 3d at 509 (Fitzgerald Smith, P.J., dissenting), quoting Black's Law Dictionary 883, 1233 (5th ed. 1979). The *Howard* dissent then stated that the difference between "may" and "shall" is "undeniable." *Howard*, 372 Ill. App. 3d at 509 (Fitzgerald Smith, P.J., dissenting). Accordingly, the *Howard* dissent concluded that, had the legislature intended to require courts to grant proper petitions under this subsection, it would have used the phrase "shall have an order entered," which "would clearly indicate the mandate the majority wants to impose here." *Howard*, 372 Ill. App. 3d at 509 (Fitzgerald Smith, P.J., dissenting). However, because the legislature used the word "may," which means "possibility," all the legislature was saying was that the defendant may have a court order entered—if he is successful. *Howard*, 372 Ill. App. 3d at 510 (Fitzgerald Smith, P.J., dissenting).

Beginning with an incorrect premise often leads to the wrong conclusion, and I fear that this is what happened with the *Howard* dissent. Although it is correct that one meaning of "may" is possibility, another is permission. See Black's Law Dictionary 1000 (8th ed. 2004) (defining "may" as "1. To be permitted to *** 2. To be a possibility"); see also Webster's New World Dictionary 373 (1983) (defining "may" as "an auxiliary expressing 1. possibility [it *may* rain]; 2. permission [you

*may* go]" (emphasis in original)). It is quite clear that in section 5(c) the legislature is using "may" to mean permission not possibility. If we accept the position of the *Howard* dissent, section 5(c) is simply a narrative in which the legislature is describing things that might happen, but the legislature really has no opinion on the matter. In other words, all that the legislature is saying is that if a defendant receives a pardon that specifically authorizes expungement, and if he files a verified petition in the circuit court setting this forth, then there is a possibility that he will have a court order entered expunging his record of arrest, but there is also a possibility that he might not. This reading of the statute cannot be correct. Statutes do many things: confer rights, prohibit conduct, etc., but conceiving hypotheticals is not one of them.

Clearly, the legislature did not use the term "may" to mean "possibility," but rather "permission." Moreover, it is obvious that the legislature *does* have an opinion on this matter. In other words, the statute clearly means that *if* a petitioner receives a pardon that specifically authorizes expungement, and *if* the petitioner establishes this in a verified petition in the circuit court, then he *has permission to* have a court order entered expunging the record of arrest. This is entirely a matter of statute, and the legislature has given a petitioner express permission to have an expungement order entered if he meets the statutory requirements. This is not a grant of permission to *seek to* have a court order entered or to *request that* a court order be entered; it is a grant of permission to *have a court order entered*. Thus, the majority is flat out wrong when it states that the legislature's use of the term "may" "merely allows the petitioner to act." 233 Ill. 2d at 219. The legislature has *not* simply given the petitioner permission to act; it has given the petitioner permission *to have a court order entered* if he meets the statutory

requirements. The majority is similarly mistaken when it states that subsection (c) does not require the entry of an order. 233 Ill. 2d at 220. If the legislature grants someone express permission to have an order entered if he meets certain requirements, then the trial court must enter that order if the requirements are met.

Another problem with the *Howard* dissent is its assertion that, had the legislature intended to deny the court discretion to deny proper petitions under the Act, it would have used the phrase "shall have an order entered." *Howard*, 372 Ill. App. 3d at 509 (Fitzgerald Smith, P.J., dissenting). The problem with this position is that, if the statute used that phrase, it would mean that the petitioner was *required* to have an expungement order entered. Obviously, the legislature did not intend to require any such thing. Rather, it gives a petitioner *permission* to have a court order entered *if he so chooses.*

The majority reaches its determination that section 5(c) confers discretion on the trial court by combining the above two approaches. After correctly determining that there is only one "may" in the statute that refers to the petitioner (233 Ill. 2d at 219), the majority inexplicably concludes two paragraphs later that there are actually two "mays" in the statute, with each one having a different definition. According to the majority, the phrase "may have a court order entered" means that "the defendant *may* [permission] submit a petition, from which he *may* [possibility] get a court order." (Emphasis in original.) 233 Ill. 2d at 220. Of course, this cannot be the meaning of "may have a court order entered." There is only one "may"; it refers to the petitioner, and it is used to grant permission. And the permission is *not* merely to submit a petition; the permission is to *have a court order entered* if the petitioner meets the statutory requirements. Thus, while I agree with the majority that the surest and most reliable indicator of legislative intent

is the statute's language given its plain and ordinary meaning (233 Ill. 2d at 218), I fail to see how taking a critical statutory term, putting it in the wrong place in the statute, and then giving it two distinct meanings at the same time, is being faithful to the plain language of the statute. The State, the *Howard* dissent, and the majority have all failed to come up with a legitimate way to read section 5(c) as conferring discretion on the trial court to deny a proper petition.

### The Meaning of Subsection (d)

According to the majority, subsection (d) grants the trial court full discretion to deny proper petitions under the Act because it provides that a trial court "shall enter an order granting or denying the petition." See 20 ILCS 2630/5(d) (West 2006). In my view, subsection (d)'s use of this phrase has been given far more attention and consequence than it deserves. *Of course* subsection (d) uses the phrase "grant or deny." If a petitioner files a verified petition setting forth that he received a gubernatorial pardon but the pardon was not one that specifically authorized expungement, everyone would agree that the trial court must deny the petition.

The majority contends that the petitioners' argument would render the "grant or deny" language of subsection (d) mere surplusage. 233 Ill. 2d at 220. Nothing could be further from the truth, and the majority is able to make this claim only because it never sets forth the petitioners' argument with respect to subsection (d). The petitioners' argument is *not* that the trial court has to grant every petition that comes before it, or that "subsection (c) is the only relevant subsection to be considered" (233 Ill. 2d at 218), but that subsections (c) and (d) must be read together, and that the grounds for the State to object to a subsection (c) petition and for the trial court to deny a subsection (c) petition are limited to a failure to satisfy the requirements of subsection (c). The require-

ments of subsection (c) are: (1) the Governor must pardon the petitioner; (2) the pardon must specifically authorize expungement; and (3) the petitioner must file a proper verified petition in the circuit court. 20 ILCS 2630/5(c) (West 2006). Thus, the petitioners' argument would not render subsection (d)'s "grant or deny" language mere surplusage; it would properly require that it be read in conjunction with the substantive requirements of subsection (c).

Subsection (d) applies to petitions filed under subsections (a), (b), and (c)—three different provisions with different language, different requirements, and different levels of discretion. Petitioners correctly argue that the "grant or deny" language of subsection (d) must be read in conjunction with the substantive requirements of each of these subsections. As we will see, subsection (a), unlike subsection (c), grants broad discretion to the circuit court, so the grounds upon which the circuit court may deny a subsection (a) petition are much broader than those under subsection (c). As *Howard* correctly stated, "[i]t is entirely logical that the grounds for objection, ceded to the prosecutor under subsection 5(d), be different for those who seek expungement under subsection 5(c) than for those who seek expungement under subsection 5(a) given the markedly different language employed in the two subsections respecting the discretion of the circuit court." *Howard*, 372 Ill. App. 3d at 506. With respect to subsection (c), "the State may merely object on the grounds that the defendant has not fulfilled the requirement of that subsection, and *** the circuit court may only consider whether that statutory requirement has been met." *Howard*, 372 Ill. App. 3d at 506. This is *not* reading limitations into subsection (d) that are not there; it is reading subsection (d) in conjunction with the substantive requirements of the particular subsection at issue, which is exactly what a court is supposed to do.

See *People v. Glisson*, 202 Ill. 2d 499, 505 (2002) (court should read statute as a whole rather than consider phrases in isolation); *People v. Maggette*, 195 Ill. 2d 336, 348 (2001) (court must consider the entire statute and interpret each of its relevant parts together).

In fairness to the majority, it should be noted that its construction of subsection (d) is not inconsistent with its construction of subsection (c). If one views subsection (c) as merely describing possible things that might happen, it is not illogical to view subsection (d) as granting complete discretion to the trial court to deny petitions that satisfy the statutory requirements. When subsection (c) is properly construed as a grant of permission to have a court order entered if the petitioner meets the statutory requirements, however, then it is clear that subsection (d)'s use of the word "deny" refers only to the ability to deny a petition that fails to meet the statutory requirements. The dispute is merely over the breadth of the word "deny." In neither instance is the phrase "grant or deny" rendered mere surplusage.[2]

## Subsections (a) and (b)

As the majority notes, two other subsections of section 5 are subject to the notice requirements of subsection (d). 233 Ill. 2d at 220. A consideration of the language of these two subsections illuminates the legislature's intent in subsection (c) and also shows why subsection (d) must be read in conjunction with the substantive requirements of each respective subsection. Subsection (a) deals with first offenders who are acquitted or otherwise released without being convicted. In

---

[2]It is worth noting that, even if petitioners were arguing that trial courts had to grant every subsection (c) petition placed in front of them, that *still* would not render the "grant or deny" language mere surplusage, as section (d) applies to subsections (a), (b), and (c), and there is no dispute that trial courts have complete discretion to deny subsection (a) petitions.

this subsection, the legislature provided that the trial court "may upon verified petition of the defendant order the record of arrest expunged." 20 ILCS 2630/5(a) (West 2006). Here, the legislature used the word "may" in regard to the trial court, not the petitioner. Instead of saying that the petitioner may "have a court order entered," the legislature stated that the trial judge may "order the record of arrest expunged." Consequently, this subsection has been interpreted to grant the trial court discretion to deny a petition even if the petitioner satisfies the statutory requirements. See *Chesler v. People*, 309 Ill. App. 3d 145, 152 (1999); *People v. Wells*, 294 Ill. App. 3d 405, 408-09 (1998). Although the majority concerns itself with why the legislature did not use the phrase "shall enter an expungement order," as it did in subsection (c—6), it never explains why, if the legislature intended to grant discretion, it did not assign the word "may" to the trial court, as it did in subsection (a).

As petitioner Howard points out, at the time the legislature enacted subsection (c), the courts had already construed subsection (a) as granting discretion to trial courts to deny petitions brought under that subsection, yet the legislature chose *not* to use the same language it used in subsection (a). In other words, the legislature very easily could have tracked the language of subsection (a) and drafted subsection (c) to provide as follows:

"Whenever a person who has been convicted of an offense is granted a pardon by the Governor which specifically authorizes expungement, the chief judge of the circuit where the person had been convicted, any judge of the circuit designated by the Chief Judge, or in counties of less than 3,000,000 inhabitants, the presiding judge at the defendant's trial, may upon verified petition of the defendant order the record of arrest expunged from the official records of the arresting authority and order that the records of the clerk of the circuit court and the Department be sealed until further order... ."

The legislature did *not* do this, instead providing that, if a petitioner meets the statutory requirements, he may have an expungement order entered. Under settled rules of statutory construction, we presume that the legislature intended a different meaning by using different language in subsections (a) and (c). See *People v. Hudson*, 228 Ill. 2d 181, 193 (2008) (when the legislature uses certain language in one part of statute and different language in another, court may assume different meanings were intended).

Let us now turn our attention to subsection (b), which covers a situation in which any assertion of trial court discretion to deny petitions that meet statutory requirements is highly dubious. Subsection (b) concerns the right of victims of identity theft to correct the official records when the identity thief commits crimes in the victim's name. As with subsections (a) and (c), subsection (b) is subject to the notice provisions of subsection (d). Here is the language that the legislature used in subsection (b):

> "Whenever a person has been convicted of a crime or of the violation of a municipal ordinance, in the name of a person whose identity he has stolen or otherwise come into possession of, the aggrieved person from whom the identity was stolen or otherwise obtained without authorization, upon learning of the person having been arrested using his identity, *may, upon verified petition to the chief judge of the circuit wherein the arrest was made, have a court order entered* nunc pro tunc by the chief judge to correct the arrest record, conviction record, if any, and all official records of the arresting authority, the Department, other criminal justice agencies, the prosecutor, and the trial court concerning such arrest, if any, by removing his name from all such records in connection with the arrest and conviction, if any, and by inserting in the records the name of the offender, if known or ascertainable, in lieu of the aggrieved's name." (Emphasis added.) 20 ILCS 2630/5(b) (West 2006).

Here, as in subsection (c), the legislature used the "may have a court order entered" language instead of subsection (a)'s language that the trial court "may \*\*\* order the record of arrest expunged." Consequently, whatever this court interprets the phrase "may have a court order entered" to mean in subsection (c) will also apply to subsection (b). See *Maggette*, 195 Ill. 2d at 349 (words used in one section of a statute have the same meaning when used in other sections of the same statute, unless a contrary legislative intent is clearly expressed). To the majority's credit, it does not deny the consequences of its holding. Indeed, the majority states explicitly that "for petitions filed under subsection (b), a trial court retains discretion where the records show the conviction was made under a wrong name." 233 Ill. 2d at 220. No authority is cited for this proposition, but it is the necessary consequence of the majority's reading of subsection (c).

I do not think that this point can be glossed over as quickly as the majority wants it to be, and if we consider it further, I think we gain clear insight into the meaning of the phrase "may have a court order entered." So there can be no mistake: *a majority of the Illinois Supreme Court has today explicitly stated that trial courts have broad discretion to deny victims of identity theft the right to have the official records corrected when identity thieves commit crimes in their name.* If my colleagues truly believe this, can they give some examples of when it would be appropriate for a trial court to deny a proper petition under this susbsection? I can think of no circumstances under which it would be appropriate for a trial court to place such a crippling burden on an innocent victim and to grant such an unjustified benefit to a criminal. And if there are no such examples, is that perhaps a strong indication that the legislature did *not* intend to grant such discretion? I believe that, as with

subsection (c), the State's right to object and the trial court's right to deny a petition filed under this subsection is limited to a failure to satisfy the statutory requirements. Thus, unless the petition is not verified or unless the petition fails to establish that the crimes actually were committed by another person, the trial court must grant the petition.

The *Holland* majority held that the factors that courts have adopted to guide trial court discretion under subsection (a) should also apply to the consideration of petitions filed under subsection (c). *Holland*, 374 Ill. App. 3d at 128. We should thus assume that courts will also apply these factors to petitions filed under subsection (b). Those factors are: "the strength of the State's case against petitioner; the State's reasons for wishing to retain the records; petitioner's age, criminal record and employment history; the length of time between the arrest and expungement petition; and the adverse consequences the petitioner may suffer if expungement is not granted." *Holland*, 374 Ill. App. 3d at 128. Does it make any sense to consider these factors when we are talking about the right to have official records reflect the name of the person who actually committed a crime? If A steals B's identity and commits a crime in B's name, and B goes to court to exercise his statutory right to have the official records corrected, is the trial court really entitled to mull over B's age and employment history when deciding whether to order the records corrected to show that A committed the crime? At that point would we have reached absurdity, injustice, or inconvenience? See *Palmer*, 218 Ill. 2d at 156. This is the path that the majority has set us on, and I think that it is as clear an indication as anything that this court is simply not reading the phrase "may have a court order entered" correctly.

I do not believe that the legislature intended to grant discretion to trial courts to deny proper petitions filed

under subsection (b). When considering subsection (b) together with subsection (c—6) of the Act (20 ILCS 2630/5 (West 2006)) and section 5—5—4(b) of the Unified Code of Corrections (730 ILCS 5/5—5—4(b) (West 2006)) (both mandating expungement after judicial determinations of factual innocence), I see an unmistakable policy determination by the legislature—consistent with the most basic notions of justice and fundamental fairness—that in Illinois the factually innocent will not be forced to bear the stain of crimes they did not commit. By contrast, the majority apparently believes that the legislature's intent was to mandate expungement for the factually innocent who have been criminal defendants (233 Ill. 2d at 220), but to give the trial court complete discretion to decide if correction of official records is appropriate for a small category of the factually innocent who have not been criminal defendants (233 Ill. 2d at 220). If that was indeed the legislature's intent, then the legislature unquestionably intended something absurd, unjust, and inconvenient. We are supposed to presume that the General Assembly intended *none* of these things, let alone all three. See *Palmer*, 218 Ill. 2d at 156.

Considering subsection (c) together with subsections (a) and (b) leaves *no* doubt that the legislature did not intend to grant trial courts the discretion to deny petitions that meet the statutory requirements of subsection (c). Rather than use the discretionary language of subsection (a), the legislature used the same language that it used when dealing with the right of factually innocent victims of identity theft to have official records corrected to show the name of the person who actually committed the crime. The right of a trial court to deny a petition under subsections (b) and (c) is clearly limited to those cases in which the statutory requirements are not met.

Subsection (c—6) and section 5—5—4(b)

The majority compares subsection (c) with subsection (c—6) of the Act and section 5—5—4(b) of the Code.

These provisions deal with judicial determinations of factual innocence and provide that when a conviction has been set aside on direct review or collateral attack and the court determines by clear and convincing evidence that the defendant was factually innocent "the court shall enter an expungement order." 20 ILCS 2630/5(c—6) (West 2006). According to the majority, the legislature would have used this language if it intended to make expungement mandatory. 233 Ill. 2d at 221. But, as *Howard* correctly held, stating that a petitioner "may have a court order entered" is also mandatory with respect to the circuit court. *Howard*, 372 Ill. App. 3d at 502. This was another point of contention between the majority and the dissent in *Howard*, with the majority stating that the difference between the language in subsection (c) and section 5—5—4(b) is a "distinction without a difference" (*Howard*, 372 Ill. App. 3d at 504); while the dissent believed that "[t]he difference between section 5—5—4(b) of the Code and subsection 5(c) of the Act is huge" (*Howard*, 372 Ill. App. 3d at 515 (Fitzgerald Smith, P.J., dissenting)). Once again, the *Howard* majority was correct. Reaching this conclusion requires us to look past the superficial distinction that one phrase uses the term "may" and one uses the term "shall," but look past it we must because the legislature used those terms with respect to different actors.

Far from showing that the different phrasing indicates that the legislature intended a different result (see 233 Ill. 2d at 221), it merely shows that one phrase is worded with the *trial court* as the subject and the other with the *petitioner* as the subject. Moreover, when we consider the different procedural postures of the two situations, the legislature's choice of words makes perfect sense. As I mentioned above, the legislature could not have used the phrase "shall have a court order entered" because that would mean that the petitioner was *required*

to have an expungement order entered. There is no evidence that the legislature intended to require defendants who receive gubernatorial pardons to have their records expunged; it has merely given them that right, if they choose to exercise it. When worded to give the petitioner a choice whether to have an expungement order entered, the grammatically correct phrase to use would be that the petitioner "may have a court order entered." With respect to the *trial court*, this is no different than saying that the court "shall enter an order." By contrast, it is completely different from the language in subsection (a), which states that the trial court "may *** order the record of arrest expunged." The equivalent phrasing of subsection (a) with the petitioner as the subject would be that the petitioner "may *seek to* have a court order entered." In short: the petitioner "may have a court order entered" is equivalent to the court "shall enter an order"; the petitioner "may seek to have a court order entered" is equivalent to the court "may order the record expunged." And, as set forth above, when we consider that subsection (b), subsection (c—6), and section 5—5—4(b) of the Code all deal with the factually innocent, we have clear evidence that the legislature uses the wording that a petitioner "may have a court order entered" interchangeably with that stating that a court "shall enter an order."

The wording the legislature chose makes perfect sense when the procedural postures of the cases are concerned. Subsection (c—6) and section 5—5—4(b) are triggered by situations within the court system: there has been a reversal of a conviction or sentence or the conviction or sentence has been set aside on collateral attack, and the court determines by clear and convincing evidence that the defendant was factually innocent. The legislature gives the trial court express directions on what it should do in this situation: enter an order

expunging the record of arrest. By contrast, subsections (b) and (c) are triggered by events occurring outside the court system. Subsection (b) is triggered when a person learns that another has been arrested using his identity (20 ILCS 2630/5(b) (West 2006)) and subsection (c) is triggered when a person receives a gubernatorial pardon specifically authorizing expungement (20 ILCS 2630/5(c) (West 2006)). Thus, the legislature makes these people the subject of the sentence and gives them directions for what they need to do to have court orders entered expunging or correcting their records.

### Language of the Pardons

The majority finds significance in the wording that the former Governors used in the orders pardoning Howard and Holland. These orders both used the phrase, "Grant Pardon Based Upon Innocence With Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5." The majority follows its quote of this language with the *non sequitur* that the "use of the word 'permitting' implicitly acknowledges that a court has power under section 5(c) of the Act to grant or deny a petition." 233 Ill. 2d at 222. It does no such thing. Yes, the orders use the word "permitting," but the orders are permissive *as to the petitioners*, not the circuit court. Again, the former Governors did not *require* that either Holland or Howard go to court to have their records expunged; they gave them permission to do so, if they so choose. The *only* significance in the language of the pardon orders is that it shows that petitioners fulfilled one of the statutory requirements for expungement. One of the requirements is that the pardon must specifically authorize expungement. These pardons did so. See Webster's Third New International Dictionary 146 (1993) (defining "authorize" as to "endorse, empower, justify, or permit"). The next statutory requirement was fulfilled when petitioners Howard and Holland established this

fact in verified petitions in the circuit court. Consequently, they were permitted to have orders entered expunging their records, and the court erred in not doing so. There is no significance in the language of the Governors' orders beyond the fact that it shows the fulfillment of one of the statutory requirements for expungement.

### Legislative History

Because I believe that the statutory language, given its plain and ordinary meaning, settles the question before the court, I do not believe that reliance on legislative history is necessary. That said, because the majority reaches the wrong result, and because no panel of judges has been able to agree on the proper interpretation of this statute, I would briefly point out that the legislative history supports the petitioners' construction. Because the *Howard* opinion contains a thorough and compelling analysis of the legislative history, I would refer the reader to that discussion (see *Howard*, 372 Ill. App. 3d at 499-505), and I see no need to go over all of those points in detail in this dissent. In short, the version of subsection (c) originally proposed by the legislature did not contain the clause "which specifically authorizes expungement." Thus, the original version would have allowed anyone who had received a gubernatorial pardon to have an expungement order entered. Former Governor Edgar believed that the statute was too broad and responded with an amendatory veto, noting that pardons were sometimes granted for limited purposes such as to allow someone to obtain a particular license, with the express understanding that there would be no expungement. Former Governor Edgar did not believe that it would be fair for such pardonees to have their records expunged, and thus recommended that the statute be amended to provide for expungement only when specifically authorized by the Governor. Journal of the Illinois House of

Representatives, 87th Ill. Gen. Assem., November 5, 1992, at 9105-08. In proposing a legislative override, Representative Lang explained that the Governor's version was not what he had in mind because he did not want people who had already received pardons to have to go back and seek gubernatorial authorization, and that the original bill would have allowed someone who had received a pardon to "go right into court and get his records expunged." 87th Ill. Gen. Assem., House Proceedings, November 19, 1992, at 64-65 (statements of Representative Lang). Speaking in opposition to the legislative override, Representative Black believed that former Governor Edgar's amendatory veto was wise because otherwise "any individual who gets a pardon would have his records expunged, and the Governor is simply saying, those records should not be expunged in every case." 87th Ill. Gen. Assem., House Proceedings, November 19, 1992, at 65-66 (statements of Representative Black). This back and forth between the former Governor and the legislature really makes sense only if the statute provides for automatic expungement for those who meet the statutory requirements. If the circuit court had full discretion to deny expungement petitions, then former Governor Edgar would have had little reason to be concerned that those who had received pardons only for a limited purpose with an understanding that there would be no expungement would have their records expunged. Similarly, Representative Black's statements that "any individual who gets a pardon would have his records expunged" and the "Governor was simply saying that expungement should not happen in every case" make sense only if the statute provided for automatic expungement. It is very difficult to review the legislative history and come away with the conclusion that the legislature intended to grant trial courts full discretion to decide who should receive expungements, while limit-

ing the Governor's role to a simple advisory one, making nonbinding recommendations to the circuit court.

Conclusion

The majority opinion is directly contrary to the plain language of the statute and to obvious legislative intent. Statutory language stating that a person "may have a court order entered" if he meets certain requirements does not vest the circuit court with discretion to deny petitions that comply with the statute. That this is the legislature's intent with respect to subsection (c) is confirmed when it is compared with other subsections of section 5 and with section 5—5—4(b) of the Code. Because petitioners Howard and Holland met the statutory requirements for expungement, they were entitled to have expungement orders entered. This was the correct conclusion of the court in *Howard*, and its decision should be affirmed. *Holland* was not faithful to the plain language of the statute, and it should be reversed.

JUSTICE KILBRIDE joins in this dissent.